# 21-2729

United States Court of Appeals

for the

Second Circuit

---

ZACHARY SOLOMON,

*Plaintiff-Appellee,*

— v. —

ST. JOSEPH HOSPITAL, CATHOLIC HEALTH SYSTEM OF LONG
ISLAND, INC.,

*Defendants-Appellants.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

**BRIEF FOR COURT-APPOINTED *AMICUS CURIAE***

---

TIMOTHY W. HOOVER
SPENCER L. DURLAND
Hoover & Durland LLP
*Court-Appointed Amicus Curiae*
561 Franklin Street
Buffalo, New York 14202
(716) 800-2600
thoover@hooverdurland.com
sdurland@hooverdurland.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................. ii

INTEREST OF *AMICUS CURIAE* ................................................ 1

STATEMENT OF ISSUES PRESENTED...................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT.................. 1

STATEMENT OF THE CASE ..................................................... 3

ARGUMENT............................................................................. 5

I.  THIS COURT HAS JURISDICTION TO DECIDE WHETHER
    THE DISTRICT COURT HAD JURISDICTION, BUT NOT TO
    REVIEW THE ORDER APPEALED FROM......................................... 5

    A.  This Court has jurisdiction to decide whether the district
        court had subject-matter jurisdiction......................................... 5

    B.  If the Court's power to assess the district court's subject-
        matter jurisdiction depends on the propriety of
        Defendants' interlocutory appeal, appellate jurisdiction is
        lacking. ........................................................................................... 9

II. THE DISTRICT COURT LACKED SUBJECT-MATTER
    JURISDICTION. ................................................................................. 13

    A.  Complete preemption creates federal-question
        jurisdiction; defensive preemption does not. ........................... 14

    B.  Every circuit court to consider the issue has held that the
        PREP Act does not completely preempt state-law
        negligence claims.......................................................................... 16

    C.  The Court should hold that the PREP Act does not
        completely preempt Plaintiff's state-law negligence
        claims............................................................................................... 19

    D.  The contrary arguments raised in other cases are not
        persuasive. ...................................................................................... 20

CONCLUSION.......................................................................... 25

CERTIFICATE OF COMPLIANCE........................................... 26

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aetna Health Inc. v. Davila,*
    542 U.S. 200 (2004) .................................................. 15, 19, 22, 23, 24, 25

*Auraria Student Housing at the Regency, LLC v.*
*Campus Village Apartments, LLC,*
    703 F.3d 1147 (10th Cir. 2013) ....................................................... 11, 12

*Avco Corp. v. Aero Lodge No. 735,*
    390 U.S. 557 (1968) ............................................................................... 22

*Belya v. Kapral,*
    45 F.4th 621 (2d Cir. 2022) ................................................................. 10

*Bender v. Williamsport Area Sch. Dist.,*
    475 U.S. 534 (1986) ............................................................................... 5

*Beneficial Nat. Bank v. Anderson,*
    539 U.S. 1 (2003) ........................................................................ 14, 15, 19

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.,*
    373 F.3d 296 (2d Cir. 2004) ............................................................. 23, 24

*Caterpillar Inc. v. Williams,*
    482 U.S. 386 (1987) ......................................................................... 14, 15

*Digit. Equip. Corp. v. Desktop Direct, Inc.,*
    511 U.S. 863 (1994) ............................................................................... 10

*Estate of Maglioli v. Alliance HC Holdings LLC,*
    16 F.4th 393 (3d Cir. 2021) ........................................... 17, 18, 22, 23, 24

*Ex parte McCardle,*
    7 Wall. 506 (1868) ................................................................................. 6

*Funk v. Belneftekhim,*
    739 F. App'x 674 (2d Cir. 2018) .......................................................... 8

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,*
    545 U.S. 308 (2005) ............................................................................... 13

*Great S. Fire Proof Hotel Co. v. Jones,*
    177 U.S. 449 (1900) ............................................................................... 7

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

*Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC,*
    814 F.3d 146 (2d Cir. 2016 ....................................................... 6

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,*
    488 F.3d 112 (2d Cir. 2007) ......................................... 6, 7, 8, 9

*In re World Trade Center Disaster Site Litig.,*
    521 F.3d 169 (2d Cir. 2008) ............................................... 10, 11

*In re WTC Disaster Site,*
    414 F.3d 352 (2d Cir. 2005) ........................... 15, 16, 18, 19, 22

*Martin v. Petersen Health Ops., LLC,*
    37 F.4th 1210 (7th Cir. 2022) ............................................ 13, 18

*Merritt v. Shuttle, Inc.,*
    187 F.3d 263 (2d Cir. 1999) .................................................. 5, 6

*Mitchell v. Advanced HCS, L.L.C.,*
    28 F.4th 580 (5th Cir. 2022) ...................................... 13, 18, 22

*Mitchell v. Forsyth,*
    472 U.S. 511 (1985) ............................................................... 12

*Price v. J & H Marsh & McLennan, Inc.,*
    493 F.3d 55 (2d Cir. 2007) ..................................................... 12

*Rambo v. Daley,*
    68 F.3d 203 (7th Cir. 1995) ................................................... 12

*Saldana v. Glenhaven Healthcare LLC,*
    27 F.4th 679 (9th Cir. 2022) ................................................. 18

*Shapnik v. Hebrew Home for Aged,*
    535 F. Supp. 3d 301 (S.D.N.Y. 2021) ................................. 3, 13

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) ....................................................... 6, 8, 9, 12

*Sullivan v. Am. Airlines, Inc.,*
    424 F.3d 267 (2d Cir. 2005) ................................................... 14

*Toussie v. Powell,*
    323 F.3d 178 (2d Cir. 2003) ................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

*United States v. Corrick,*
   298 U.S. 435 (1936) ................................................................ 6

*Will v. Hallock,*
   546 U.S. 345 (2006) .............................................................. 10

*Wurtz v. Rawlings Co., LLC,*
   761 F.3d 232 (2d Cir. 2014)................................................. 14

**Statutes**

28 U.S.C. § 1441(a) .................................................................... 14

28 U.S.C. § 1442 ........................................................................... 5

42 U.S.C. § 247d-6d ..................................................................... 1

42 U.S.C. § 247d-6d(a)(1)........................................ 4, 10, 17, 20

42 U.S.C. § 247d-6d(a)(2)(B) ........................................ 4, 17, 20

42 U.S.C. § 247d-6d(b)(8) ................................................... 4, 20

42 U.S.C. § 247d-6d(c)(4) ......................................................... 24

42 U.S.C. § 247d-6d(c)(5) ......................................................... 24

42 U.S.C. § 247d-6d(d)(1)......................... 17, 19, 20, 21, 23, 24

42 U.S.C. § 247d-6e(a) .............................................................. 17

## INTEREST OF *AMICUS CURIAE*

The undersigned was appointed by the Court as *amicus curiae* to brief two jurisdictional issues. (Doc. 53; Doc. 105.[1])

## STATEMENT OF ISSUES PRESENTED

1.     Whether, and to what extent, the Court has jurisdiction over the district court's September 29, 2021 order.

2.     Whether the district court had subject-matter jurisdiction to hear the case below.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff-Appellee Zachary Solomon filed a garden-variety medical-malpractice and negligence action in state court. Defendants removed the action, asserting federal-question jurisdiction, and then moved to dismiss on the ground that the Public Readiness and Emergency Preparedness Act, 42 U.S.C. § 247d-6d *et seq.* ("PREP Act") grants them immunity from suit and liability. The district court denied the motion to dismiss, and Defendants took an interlocutory appeal.

1.     *Appellate jurisdiction.* This Court has jurisdiction to confirm its own subject-matter jurisdiction and that of the district court. It does not, however, have jurisdiction to consider the denial of Defendants' motion to dismiss. Though Defendants claim an immunity from suit, which

---

[1]    No party's counsel authored any part of this brief, and no one other than the undersigned and his law firm contributed money to fund the preparation of this brief.

often triggers the collateral-order doctrine, that doctrine does not apply here because Defendants are private actors, and granting immediate review does not vindicate any vital public interest such as federalism or state sovereignty. Moreover, the district court's decision as to Defendants' immunity does not finally resolve the issue because the court lacked the power to rule.

2.    *Subject-matter jurisdiction below*. The parties here are not diverse, and Plaintiff's complaint asserts only state-law negligence claims. The one colorable argument for subject-matter jurisdiction is that the PREP Act completely preempts Plaintiff's state-law claims, such that those claims are necessarily federal in character and therefore sufficient to create federal-question jurisdiction. That argument is unavailing.

Complete preemption only creates federal-question jurisdiction when (i) Congress creates an exclusive federal cause of action; and (ii) the plaintiff's state-law claim falls within the scope of that exclusive federal cause of action. The PREP Act does create an exclusive federal cause of action, but only for claims alleging a serious injury or death caused by willful misconduct. As four other circuits have held, this narrow federal cause of action does not completely preempt garden-variety negligence claims. Because the district court lacked subject-matter jurisdiction, the Court should vacate the decision below and remand with instructions to return Plaintiff's suit to state court.

## STATEMENT OF THE CASE

We assume the Court's familiarity with the PREP Act, as its provisions are canvassed in Defendants' brief (Doc. 35), in the brief of *amicus curiae* Vivian Rivera-Zayas (Doc. 86), and in decisions such as *Shapnik v. Hebrew Home for Aged*, 535 F. Supp. 3d 301 (S.D.N.Y. 2021).

Plaintiff filed a summons and complaint in New York State Supreme Court against Defendants St. Joseph Hospital and Catholic Health System of Long Island, Inc. (Joint Appendix, Doc. 30 at ("A") 18.) The complaint's first two causes of action allege garden-variety medical malpractice and negligence. Specifically, Plaintiff alleges that between March 23 and April 14, 2020, he suffered "a hospital acquired pressure injury" when Defendants "fail[ed] to rotate [him] for several days" and failed to properly treat the resulting pressure sores. (A 21-28.) The third cause of action, for gross negligence, asserts that Defendants' staff falsely assured Plaintiff's family that he was being regularly turned and/or rotated. (A 28-29.) The complaint does not allege willful misconduct or demand punitive damages. Nor does it reference COVID-19, the PREP Act, covered countermeasures, or a federal cause of action.

Defendants removed the action to the United States District Court for the Eastern District of New York (Block, S.U.S.D.J.) (A 9), asserting that the case "arises under federal law" because the PREP Act completely preempts Plaintiff's state-law claims (A 11).

Plaintiff did not move to remand. Rather, the next motion filed was Defendants' motion to dismiss, which made two arguments relevant here. First, Defendants argued that the PREP Act completely preempts Plaintiff's state-law causes of action (*see, e.g.*, E.D.N.Y. Doc. 19-1 at 17), thereby depriving the district court "of subject matter jurisdiction" (*Id*. at 19). Second, Defendants argued that the complaint fails to state a claim because the PREP Act creates a "defense that completely bars plaintiff's claims." (*Id*. at 25.) Specifically, the PREP Act immunizes healthcare workers against claims for losses caused by the use of a "covered countermeasure," and preempts contrary state law. 42 U.S.C. §§ 247d-6d(a)(1), (a)(2)(B), (b)(8). Plaintiff's suit runs afoul of these provisions, Defendants argued, because a ventilator is a covered countermeasure, and Plaintiff's need for a ventilator prevented proper rotation. Plaintiff opposed the motion. (E.D.N.Y. Doc. 22.)

The district court denied Defendants' motion to dismiss (Doc. 3; A 66), finding that although Plaintiff was on a ventilator at the time of his injuries, his complaint alleges an injury caused by Defendants' "failure to uphold a duty and proper standards of medical care separate from the use of the ventilator." (A 72.) As such, "the claims he has brought are not so inextricably intertwined with the use of a covered countermeasure so as to invoke PREP Act preemption at this time." (*Id.*; *accord* A 74.)

Defendants filed this appeal, asserting that the collateral-order doctrine supports interlocutory appellate jurisdiction, and that the district

court had "federal question jurisdiction under the federal officer removal statute (28 U.S.C. § 1442)." (Doc. 35 at 4.) This Court issued an order specifying the two issues for appointed *amicus curiae* to brief (Doc. 53). Two pending cases, *Leroy v. Hume*, No. 21-2158(L) (2d Cir.), and *Rivera-Zayas v. Our Lady of Consolation Geriatric Care Center*, No. 21-2164 (2d Cir.), raise the issue discussed in § II below.

## ARGUMENT

**I.  THIS COURT HAS JURISDICTION TO DECIDE WHETHER THE DISTRICT COURT HAD JURISDICTION, BUT NOT TO REVIEW THE ORDER APPEALED FROM.**

This Court has jurisdiction to consider whether the district court had subject-matter jurisdiction. It does not have jurisdiction to review the denial of Defendants' motion to dismiss because the collateral-order doctrine does not apply.

**A.  This Court has jurisdiction to decide whether the district court had subject-matter jurisdiction.**

"Every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (cleaned up). Accordingly, even when the parties have not presented the issue, this Court has often considered whether the district court had jurisdiction, particularly where the "existence of subject matter jurisdiction goes to the very power to issue the rulings . . . under consideration." *Merritt v. Shuttle, Inc.*, 187 F.3d 263, 269 (2d Cir. 1999); *accord Hapag-Lloyd*

*Aktiengesellschaft v. U.S. Oil Trading LLC*, 814 F.3d 146, 150 n.10 (2d Cir. 2016); *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 121-24 (2d Cir. 2007).

It is true that in prior cases, the Court had clear authority for reviewing the district court's decision. *Hapag-Lloyd*, 814 F.3d at 150 n.10 (appeal from injunction order); *MTBE*, 488 F.3d at 121 (collateral-order doctrine); *Merritt*, 187 F.3d at 267-68 (collateral-order doctrine). Here, by contrast, the decision denying Defendants' motion to dismiss may not be properly before the Court. *See infra* § I.B (arguing that the collateral-order doctrine does not apply). All the same, we think that in a case where the Court has questions about both the district court's subject-matter jurisdiction and the propriety of an interlocutory appeal, it can address the district court's jurisdiction without first ensuring that an interlocutory appeal is appropriate.

For one thing, the Supreme Court has not included any such limitation when describing the federal courts' duty to police subject-matter jurisdiction. *See, e.g.*, *United States v. Corrick*, 298 U.S. 435, 440 (1936). In fact, the Supreme Court has long treated subject-matter jurisdiction as a first-order question. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("'Without jurisdiction the court cannot proceed at all in any cause. . . . [W]hen it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case.'" (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1868)); *Great S. Fire Proof Hotel Co. v.*

*Jones*, 177 U.S. 449, 453 (1900) ("On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes."). Thus, where it appears that a case may not belong in federal court at all, the Court has authority to address the issue immediately.

We read *MTBE* to support this reasoning. In that case, California and New Hampshire sued several companies involved in the manufacture and distribution of MTBE, alleging that this chemical had contaminated their drinking water. 488 F.3d at 114. The defendants removed the case to federal court and the district court denied the States' motion for remand, holding that it had federal-question jurisdiction and the States' sovereign immunity did not prevent removal. *Id.* at 115. The States then filed an interlocutory appeal, asking this Court to decide (i) whether sovereign immunity precluded removal; and (ii) if not, whether the district court had subject-matter jurisdiction. *Id.*

After finding that sovereign immunity did not preclude removal, *id.* at 121, the Court turned to the question of whether it could even inquire into the district court's subject-matter jurisdiction, since "the subject matter jurisdiction of the district court . . . is not normally the proper subject of an interlocutory appeal," *id.* at 115. The Court concluded that such review was not only permitted but "required pursuant to our independent obligation to satisfy ourselves of the jurisdiction of this court and the court below." *Id.* at 121. That obligation was the same for appeals

from final orders and appeals from interlocutory orders. *Id*. at 122.[2] The Court did add that reviewing the sovereign-immunity question "would be meaningless if the district court was without jurisdiction over that claim in the first instance," *id*. at 123 (cleaned up), suggesting some connection between the review of subject-matter jurisdiction and the propriety of the interlocutory appeal. But it made this point in the alternative; its primary rationale was that a circuit court "unquestionably ha[s] jurisdiction to decide whether there is any further impediment to [its] exercise of jurisdiction over the subject matter of the case and, by extension, the jurisdiction of the court below." *Id*.; *accord Steel Co*., 523 U.S. at 95 ("When the lower federal court lacks jurisdiction, we have jurisdiction . . . merely for the purpose of correcting the error of the lower court in entertaining the suit." (cleaned up)).[3]

Of course, if a panel presented with an interlocutory appeal suspects that (i) the district court may have lacked subject-matter jurisdiction and (ii) the district court's order may not be immediately

---

[2]    *See also MTBE*, 488 F.3d at 124 ("[W]e have an obligation to determine whether the district court has subject matter jurisdiction to go forward."); *id*. ("In sum, while an order denying a motion to remand may normally be reviewed only after entry of a final judgment, our obligation to remain assured of our jurisdiction and that of the court below remains intact. Therefore, in ruling in this interlocutory appeal, we must determine whether there is a proper basis for removal of these cases.").

[3]    One summary order, *Funk v. Belneftekhim*, 739 F. App'x 674, 677 (2d Cir. 2018), emphasizes *MTBE*'s secondary rationale, though without addressing *MTBE*'s primary rationale.

appealable, it could choose to analyze the latter issue first, and, if its suspicions were confirmed, to simply dismiss the appeal for want of appellate jurisdiction. But we read cases like *Steel Co.* and *MTBE* to say that the Court also has the power to tackle subject-matter jurisdiction first, and, if it finds jurisdiction lacking, to vacate and remand with appropriate instructions.

Both sequences properly prioritize the resolving of jurisdictional doubts, and in some cases addressing subject-matter jurisdiction first will be the more prudent course. Here, for example, if the Court addresses subject-matter jurisdiction first, it avoids rendering an opinion on the collateral-order doctrine as applied to private actors in a case that does not belong in federal court in the first place, and it halts further expenditure of judicial resources on a federal-court action that must at some point be remanded to state court. *See infra* § II. Furthermore, in keeping with *MTBE*'s secondary rationale, the collateral-order analysis would itself entail an inquiry into the district court's subject-matter jurisdiction. *See infra* § I.B.

**B.      If the Court's power to assess the district court's subject-matter jurisdiction depends on the propriety of Defendants' interlocutory appeal, appellate jurisdiction is lacking.**

If the Court concludes that it cannot consider the district court's subject-matter jurisdiction without first assuring itself that the order appealed from is amenable to immediate review, then the case should be dismissed for want of appellate jurisdiction.

Generally, absent certification, this Court reviews final orders. 28 U.S.C. § 1291. The collateral-order doctrine is an exception to this rule, but it applies only to a "'narrow and selective'" class of interlocutory orders. *Belya v. Kapral*, 45 F.4th 621, 628 (2d Cir. 2022) (citing *Will v. Hallock*, 546 U.S. 345, 350 (2006)). The doctrine is decidedly "modest" in scope, *Will*, 546 U.S. at 350, and its conditions are "stringent," *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994), since it is meant to apply only to claims "that are too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated," *In re World Trade Center Disaster Site Litig.*, 521 F.3d 169, 179 (2d Cir. 2008) (cleaned up). Thus, for the Court to have jurisdiction under the collateral-order doctrine, "the order appealed must (1) be effectively unreviewable on appeal from a final judgment; (2) conclusively determine the disputed question; and (3) resolve an important issue completely separate from the merits of the action." *Id.* (cleaned up).

Defendants' motion to dismiss invoked the PREP Act provision conferring immunity "from suit and liability," 42 U.S.C. § 247d-6d(a)(1). Orders rejecting immunity from suit are often immediately appealable on the theory that the right not to stand trial *at all* is independently valuable, and is forever lost if a district court erroneously permits litigation to proceed. *In re World Trade Center Disaster Site*, 521 F.3d at 179.

Importantly, though, denials of immunity from suit are not *necessarily* subject to interlocutory appeal. The Supreme Court has

> permitted collateral appeal in only a few exceptional categories of cases. Each category recognized some particular value of a high order that supported the interest in avoiding trial: honoring the separation of powers, preserving the efficiency of government and the initiative of its officials, respecting a State's dignitary interests, and mitigating the government's advantage over the individual. . . . [I]t is not mere avoidance of a trial, but avoidance of a trial that would imperil a substantial public interest, that counts when asking whether an order is effectively unreviewable if review is to be left until later.

*Id.* (cleaned up).

Here, immediate appeal does not advance a substantial public interest. True, healthcare providers play an important role in our society, especially in the midst of a pandemic. But most subjects of legislation are important on some level. The values that have historically ranked as weighty enough to warrant interlocutory appeal—the separation of powers, the efficiency and initiative of governmental officers, a State's dignitary interests, and so on—tend to implicate sovereign prerogatives. Immediate appeal from a denial of PREP Act immunity does not vindicate such interests where, as here, the appellants are private actors.

This public-private distinction finds support in *Auraria Student Housing at the Regency, LLC v. Campus Village Apartments, LLC*, 703 F.3d 1147 (10th Cir. 2013). There, a private apartment complex took an interlocutory appeal from an order denying "*Parker* immunity." *Id.* at 1149. The Tenth Circuit dismissed the appeal, holding that even if *Parker*

immunity conferred immunity from suit, "[e]xtending the collateral order doctrine to private parties contesting an order denying *Parker* immunity does not serve a substantial public interest." *Id.* at 1153; *cf. Rambo v. Daley*, 68 F.3d 203, 206 (7th Cir. 1995) (explaining that *Mitchell v. Forsyth*, 472 U.S. 511 (1985) "permits interlocutory appeals only where the defendant is a public official asserting a defense of qualified immunity").

*Toussie v. Powell*, 323 F.3d 178 (2d Cir. 2003), is not to the contrary. There, the Court entertained an interlocutory appeal brought by a private actor who had a colorable claim to qualified immunity. *Id.* at 182. Since the defendant's interactions with government officials might have entitled him to qualified immunity (the Court ultimately held they did not), an immediate appeal vindicated the public interests identified in the Court's qualified-immunity precedents. The same cannot be said of PREP Act immunity asserted by private actors.

Finally, in addition to the lack of a vital public interest, the decision below does not conclusively determine the disputed question because it was rendered without subject-matter jurisdiction, and is therefore "ultra vires." *Steel Co.*, 523 U.S. at 101-02. Whether at this Court's direction, Plaintiff's motion, or on its own authority, the district court will at some point have to remand this case to state court, *see infra* § II, and Defendants will be free to raise their immunity defenses afresh, *Price v. J & H Marsh & McLennan, Inc.*, 493 F.3d 55, 63 (2d Cir. 2007).

In sum, if the Court decides that it must confirm the propriety of Defendants' interlocutory appeal before querying the district court's subject-matter jurisdiction, it should dismiss the appeal for want of appellate jurisdiction and trust that the district court—on Plaintiff's motion or its own—will consider whether this case was properly removed.

## II.  THE DISTRICT COURT LACKED SUBJECT-MATTER JURISDICTION.

Defendants removed this case to federal court even though the parties are not diverse and no federal question appears on the face of Plaintiff's complaint. The only colorable basis for federal subject-matter jurisdiction is complete preemption,[4] and that narrow doctrine does not apply on the facts of this case. Rather than ruling on Defendants' motion to dismiss, the district court should have remanded the matter to state court.

---

[4]     This is not one of the rare cases where "federal-question jurisdiction will lie over state-law claims that implicate significant federal issues," *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). The courts that have confronted *Grable* arguments in the PREP Act context have uniformly rejected them, because the PREP Act enters the picture only as a defense; "federal issues are neither raised nor disputed on the face of the complaint," *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580, 589 (5th Cir. 2022); *see also Shapnik*, 535 F. Supp. 3d at 320 ("This case could not be more different than *Grable*."). Similarly, though Defendants purported to remove on the basis of federal-officer jurisdiction, they did not pursue that argument and it too has been roundly rejected, *see, e.g., Martin v. Petersen Health Ops., LLC*, 37 F.4th 1210, 1212-13 (7th Cir. 2022).

**A.    Complete preemption creates federal-question jurisdiction; defensive preemption does not.**

A defendant sued in state court may remove the case to federal court only if the plaintiff could have originally brought the action in federal court. *See* 28 U.S.C. § 1441(a). Where, as here, the parties are not diverse, a defendant pursuing removal must rely on federal-question jurisdiction. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Under the well-pleaded complaint rule, a state-court complaint creates federal-question jurisdiction only if a federal question is "presented on the face of the plaintiff's properly pleaded complaint." *Id*. A federal *defense* does not satisfy the well-pleaded complaint rule, and so does not support federal-question jurisdiction. *Id*. at 392, 399; *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6 (2003).

Express, field, and conflict preemption are all federal defenses, not independent bases for federal-question jurisdiction. *See Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 238 (2d Cir. 2014); *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 273 (2d Cir. 2005). If a plaintiff brings a state-court action based on preempted state law, the defendant's remedy is a motion to dismiss in state court, not removal to federal court.

Complete preemption is an exception to these general rules. Congress completely preempts a state cause of action by creating a federal cause of action that is "the *exclusive* cause of action for the claim asserted." *Beneficial*, 539 U.S. at 8 (emphasis added). Any claim "which comes within the scope of that [exclusive federal] cause of action, even if pleaded in terms

of state law, is in reality based on federal law," and so creates federal-question jurisdiction. *Id.* In other words, while a plaintiff can usually avoid federal court by pleading only state-law claims, *Caterpillar*, 482 U.S. at 398-99, if a plaintiff brings a claim that can *only ever be federal*, because Congress has created an *exclusive* federal cause of action, a court will find that the claim "actually arises under federal law," *Beneficial*, 529 U.S. at 4, and the fact that it is nominally asserted under state law will not defeat federal-question jurisdiction, *id.* at 8; *see also In re WTC Disaster Site*, 414 F.3d 352, 372 (2d Cir. 2005) (explaining that unlike defensive preemption, complete preemption "warrants removal because claims within the preempted area are necessarily federal in character" (cleaned up)).

To determine whether a given federal statute completely preempts a given state-law claim, the Court asks two questions: (i) whether the federal statute creates an exclusive federal cause of action; and (ii) whether the plaintiff's state-law claim comes within the scope of the exclusive federal cause of action—that is, whether the plaintiff's state-law claim could have been asserted under the exclusive federal cause of action. *See Beneficial*, 539 U.S. at 8; *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207-11 (2004).

This Court applied these principles to an analogous statute in *In re WTC Disaster Site*. The plaintiffs in that case were rescue and clean-up workers who allegedly suffered respiratory injuries following the September 11 attacks on the World Trade Center. 414 F.3d at 357. Though the

plaintiffs limited their state-court suit to state-law claims, the defendants removed the case to federal court, asserting that the Air Transportation Safety and System Stabilization Act of 2001 ("ATSSSA") completely preempted the plaintiffs' claims. *Id.*

ATSSSA created (i) an administrative compensation fund to provide relief, without litigation, for people injured or killed as a result of the attacks, *id.* at 373; and (ii) an exclusive federal cause of action for any claims arising out of the hijackings and subsequent crashes, *id.* at 375. Given the explicitly exclusive federal cause of action, the Court focused on the question of scope, issuing two rulings that are pertinent here. First, the Court ascertained the scope of complete preemption solely by reference to ATSSSA's exclusive federal cause of action, and in doing so distinguished the statute's compensation fund. *Id.* at 375-76. Second, the Court held that the plaintiffs' claims for respiratory injuries fell within the scope of ATSSSA's exclusive cause of action—which covered any claims "arising out of or relating to the terrorist-related aircraft crashes of September 11"— meaning that the district court had federal-question jurisdiction notwithstanding the well-pleaded complaint rule. *Id.* at 379-80.

**B.** **Every circuit court to consider the issue has held that the PREP Act does not completely preempt state-law negligence claims.**

There are many types of claims that might arise from the COVID-19 pandemic. For a subset of pandemic-related claims—those alleging an injury caused by the use of a covered countermeasure—the

PREP Act immunizes healthcare providers from liability and suit. 42 U.S.C. §§ 247d-6d(a)(1), (a)(2)(B). For a subset of these covered-countermeasure claims—those alleging death or serious physical injury caused by willful misconduct—the PREP Act withdraws the provider's immunity and creates "an exclusive Federal cause of action." *Id.* § 247d-6d(d)(1). For all other covered-countermeasure claims, the provider's immunity holds and the plaintiff must look to an administrative fund for relief. *Id.* § 247d-6e(a).

Four circuit courts have considered whether this legislative scheme completely preempts garden-variety negligence claims. All four have said no.

In *Estate of Maglioli v. Alliance HC Holdings LLC*, 16 F.4th 393 (3d Cir. 2021), the plaintiffs' brought a wrongful-death action in state court alleging that the defendant nursing homes had failed to timely diagnose COVID-19, admitted unmasked visitors, and in various other ways negligently allowed the disease to spread. *Id.* at 401-02. The defendants removed the case to federal court based on complete preemption flowing from the PREP Act. *Id.* at 402. Like "[n]early every federal district court to confront" the issue, the district court held that it lacked jurisdiction and remanded the case to state court. *Id.*

On appeal, the Third Circuit acknowledged that the PREP Act "explicitly creates 'an exclusive Federal cause of action' for willful misconduct." *Id.* at 408 (quoting 42 U.S.C. § 247d-6d(d)(1)). But to establish complete preemption (and therefore federal-question

jurisdiction), the defendants also had to "show that the state-law claims fall within the scope of the exclusive federal cause of action." *Id.* at 410. This they could not do; the plaintiffs "allege[d] negligence, not willful misconduct," *id.* at 410, and "[w]illful misconduct is a separate cause of action from negligence," *id.* at 411. The defendants remained free to argue that the PREP Act immunized them from liability, but that was a defense, to be asserted in state court. *Id.* at 412-13.

The *Maglioli* defendants urged the Third Circuit to ascertain the scope of complete preemption by reference to *both* the PREP Act's exclusive cause of action *and* its administrative-compensation fund, but the court refused. *Id.* at 411-12. Citing this Court's decision in *WTC Disaster Site*, the court wrote: "like the Second Circuit, we see a clear difference between the preemptive effect of an exclusive cause of action and the preemptive effect of a compensation fund." *Id.* at 412.

Following *Maglioli*, the Fifth, Seventh, and Ninth Circuits considered similar cases in a similar posture, and ruled the same way. *See Mitchell*, 28 F.4th at 586 (holding that "the only cause of action [the PREP Act] creates is for willful misconduct," and the plaintiff could not have brought his negligence claims "under that cause of action"); *Martin*, 37 F.4th at 1213 (holding that the plaintiff's state-law negligence claims were "not even arguably preempted" under the PREP Act, let alone completely preempted); *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 688 (9th Cir. 2022) (holding that while the defendants say "Congress intended the

[PREP] Act to completely preempt all state-law claims related to the pandemic," the "text of the statute shows that Congress intended a federal claim only for willful misconduct claims"), *cert. denied*, 143 S. Ct. 444.

## C. The Court should hold that the PREP Act does not completely preempt Plaintiff's state-law negligence claims.

We think that the Third, Fifth, Seventh, and Ninth Circuits have correctly construed the PREP Act, and we see nothing in this Court's precedents to prevent it from endorsing their reasoning. The PREP Act completely preempts *something*, because, like the statute at issue in *WTC Disaster Site*, it explicitly creates "an exclusive Federal cause of action," 42 U.S.C. § 247d-6d(d)(1). The key question is whether that complete preemption extends to state-law negligence claims like the ones asserted in Plaintiff's complaint. To answer that question, the Court must determine whether Plaintiff's state-law negligence claims "come[] within the scope of [the PREP Act's exclusive] cause of action," *Beneficial*, 539 U.S. at 8, such that Plaintiff "could have brought his claim[s] under [42 U.S.C. § 247d-6d(d)(1)]," *Davila*, 542 U.S. at 210.

Unlike the statute at issue in *WTC Disaster Site*, which created a sweeping cause of action for *any* claims "arising out of or relating to the terrorist-related aircraft crashes of September 11," 414 F.3d at 379-80, the PREP Act's exclusive cause of action is narrow, applying only to claims "for death or serious physical injury proximately caused by willful misconduct . . . by [a] covered person," 42 U.S.C. § 247d-6d(d)(1). State-law negligence claims could not be asserted under § 247d-6d(d)(1), as they are

categorically different from the willful-misconduct cause of action that the PREP Act creates. Thus, complete preemption does not apply.

Of course, state-law negligence claims could still succumb to ordinary preemption, since the PREP Act includes an express-preemption clause that covers more ground than its exclusive cause of action. *See* 42 U.S.C. §§ 247d-6d(a)(1), (a)(2)(B) (immunizing covered persons against all claims for loss caused by the use of a covered countermeasure); *id.* § 247d-6d(b)(8) (preempting contrary state law). But ordinary preemption is a defense, to be asserted in state court, not a basis for federal-question jurisdiction.

## D. The contrary arguments raised in other cases are not persuasive.

Defendants in similar cases have offered two basic justifications for extending complete preemption beyond claims for "death or serious physical injury proximately caused by willful misconduct," 42 U.S.C. § 247d-6d(d)(1).[5] We find both justifications unconvincing.

*First*, some defendants read the PREP Act's immunity and compensation-fund provisions as part of the statute's exclusive federal cause of action, asserting that the PREP Act preempts all state-law claims relating to the use of covered countermeasures and *replaces them* with an exclusive federal cause of action for willful misconduct. Assessing complete

_____

[5] For representative examples of these arguments, see Docs. 63, 104, 136, and 137 in *Leroy v. Hume*, No. 21-2158(L) (2d Cir.).

preemption solely by reference to the exclusive cause of action, they say, denies Congress the freedom to make policy choices about what state law to displace and what substitute remedies to offer.

We think this argument comingles complete preemption with defensive preemption. Congress is free to preempt state law as broadly as Article I allows, and the beneficiaries of such legislation are free to assert a preemption defense in state court. The issue here is not whether Plaintiff's state-law negligence claims are vulnerable to a preemption defense, but whether, due to the PREP Act's exclusive federal cause of action, his state-law negligence claims are, in reality, federal claims. For the reasons given above, we do not think that Plaintiff's state-law negligence claims are, in reality, PREP Act claims "for death or serious physical injury proximately caused by willful misconduct," 42 U.S.C. § 247d-6d(d)(1).

Defendants touting the PREP Act's preemptive force have noted that Congress drew the phrase "exclusive Federal cause of action" directly from the Supreme Court's complete-preemption jurisprudence, showing that Congress appreciated the ways in which the PREP Act would alter the state-federal balance. We agree that this telling phrase is strong evidence that the PREP Act was meant to completely preempt *something*, but on the scope question we think that assiduous drafting cuts the other way. If Congress wrote the PREP Act with a keen eye on its jurisdictional ramifications, then all the more reason to honor the narrow cause of action that the PREP Act creates, and to restrict the scope of complete preemption

accordingly. Had Congress intended a greater intrusion into traditional state concerns, it surely would have said so in the provision creating an exclusive federal cause of action, as it did when it penned ATSSSA.

In addition, using the PREP Act's administrative fund to expand the scope of complete preemption contravenes *WTC Disaster Site*, where this Court ascertained the scope of complete preemption solely by reference to ATSSSA's exclusive federal cause of action, while explicitly distinguishing the statute's administrative fund, 414 F.3d at 375-80; *see also Maglioli*, 16 F.4th at 412 (holding that the PREP Act's compensation fund does not expand the scope of complete preemption); *Mitchell*, 28 F.4th at 587 (same).

*Second*, some defendants argue that an exclusive federal cause of action can offer narrower remedies than its state-law analogs without thereby narrowing the scope of complete preemption. *See Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 561 (1968) ("[T]he breadth or narrowness of the relief which may be granted under federal law in s 301 cases is a distinct question from whether the court has jurisdiction over the parties and the subject matter."); *Davila*, 542 U.S. at 214-15 ("[T]he mere fact that the state cause of action attempts to authorize remedies beyond those authorized by ERISA § 502(a) [does not] put the cause of action outside the scope of the ERISA civil enforcement mechanism.").

We grant that if the PREP Act had created an exclusive federal cause of action for all claims of pandemic-related negligence, and further

provided that plaintiffs bringing such claims could not seek punitive damages, state-law negligence claims would remain completely preempted. But what puts state-law negligence claims outside the scope of the PREP Act's exclusive cause of action is not the different remedies on offer; it is the fact that the PREP Act's cause of action "for death or serious physical injury proximately caused by willful misconduct," 42 U.S.C. § 247d-6d(d)(1), is "entirely *different*" from a garden-variety negligence claim, *Maglioli*, 16 F.4th at 411 (emphasis in original).

Some defendants have questioned the extent of the difference, arguing that the PREP Act's exclusive cause of action is really just a state-law negligence claim with a more demanding scienter requirement (willfulness rather than negligence). This minor difference, the argument goes, does not suffice to put state-law negligence claims outside the scope of the PREP Act's exclusive federal cause of action, given *Davila*'s holding that a state-law claim may be completely preempted "even if the elements of the state cause of action d[o] not precisely duplicate the elements of [the exclusive federal cause of action]," 542 U.S. at 216. In particular, defendants contend, a mere difference in scienter cannot defeat complete preemption under this Court's decision in *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296 (2d Cir. 2004).

We think this argument understates the differences between garden-variety negligence claims and the PREP Act's exclusive cause of action. In *Davila*, the Supreme Court said that a state-law claim which was

identical to an ERISA claim would not fall outside the scope of ERISA's exclusive cause of action simply because, to secure exemplary damages, it had added an allegation of mental anguish. 542 U.S. at 216. In *Briarpatch*, this Court held that the Copyright Act completely preempts certain state-law claims, *id.* at 305, and added that while a state-law claim is not completely preempted if it includes "extra elements that make it qualitatively different from a copyright infringement claim," "[a]wareness or intent . . . are not extra elements that make a state law claim qualitatively different," *id.* at 306.

      State-law negligence claims are not just PREP Act claims with an extra allegation tacked on, as in the *Davila* hypothetical, nor do they differ from PREP Act claims solely in terms of awareness or intent, a la *Briarpatch*. As the Third Circuit observed, a claim for willful misconduct under the PREP Act "requires wrongful intent, knowledge that the act lacked legal or factual justification, and disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit." *Maglioli*, 16 F.4th at 410 (cleaned up). The PREP Act also requires "death or serious physical injury," 42 U.S.C. § 247d-6d(d)(1), and creates various defenses and exclusions, *id.* § 247d-6d(c)(4)-(5). In contrast, negligence—a well-known category of legal claim distinct from intentional torts—"requires the familiar elements of duty, breach, causation, and damages," *Maglioli*, 16 F.4th at 410. The plaintiff need not allege deliberate wrongdoing, guilty knowledge, existence of a serious and

obvious risk, disregard of a serious and obvious risk, serious physical injury, fatal injury, or covered countermeasure.

Ultimately, this debate can be resolved by asking whether Plaintiff "could have brought" his state-law claims under the PREP Act's exclusive federal cause of action, *Davila*, 542 U.S. at 210. Plainly, a plaintiff alleging negligence could not have proceeded under a federal cause of action limited to allegations of willful misconduct. Therefore, the district court lacked subject-matter jurisdiction over Plaintiff's case, and was obliged to remand the matter to state court.

## <u>CONCLUSION</u>

The Court should vacate the district court's decision for lack of subject-matter jurisdiction, and remand to the district court with instructions to remand the action to state court.

Dated:     Buffalo, New York
           January 19, 2023

                                    Respectfully submitted,

                                    **HOOVER & DURLAND LLP**
                                    *Court-Appointed Amicus Curiae*

                                    By:  s/Timothy W. Hoover
                                         Timothy W. Hoover
                                         Spencer L. Durland
                                    561 Franklin Street
                                    Buffalo, New York 14202
                                    (716) 800-2600
                                    *thoover@hooverdurland.com*
                                    *sdurland@hooverdurland.com*

## CERTIFICATE OF COMPLIANCE

This brief complies with the Court's Order (Doc. 53) because it is not longer than 25 double-spaced pages, excluding the portions listed in FED. R. APP. P. 32(f). This brief also complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and the type-style requirements of FED. R. APP. P. 32(a)(6), because it has been prepared using Microsoft Office Word and a proportionately spaced, serif font (Georgia Pro, 14 point).

**HOOVER & DURLAND LLP**
*Court-Appointed Amicus Curiae*

By: s/Timothy W. Hoover
Timothy W. Hoover
Spencer L. Durland
561 Franklin Street
Buffalo, New York 14202
(716) 800-2600
*thoover@hooverdurland.com*
*sdurland@hooverdurland.com*